THE MAYOR, RECORDER, ALDERMEN, AND COMMON COUNCIL OF GEORGETOWN, APPELLANTS v. THE ALEXANDRIA CANAL COMPANY, AND WILLIAM TURNBULL, APPELLEES.

A bill was filed by the Corporation of Georgetown, on behalf of themselves and the citizens of Georgetown, against the Alexandria Canal Company; stating that the company were constructing an aqueduct across the Potomac river, within the corporate limits of Georgetown; that the Potomac was a public highway; and that the free use of the river was secured to all persons residing on the border of the river, or interested in its navigation, by the compact of 1785, between Virginia and Maryland. The aqueduct, with the works of the Alexandria Canal Company, the bill stated, obstructed the navigation of the river, and injured the owners of wharf property on the same. The bill asked an injunction to stay the further proceedings of the defendants, and for other relief. The Alexandria Canal Company, incorporated by congress, denied the right of the Corporation of Georgetown to interfere in the matter; denied that their works are within the corporate limits of Georgetown; and that the Court has jurisdiction to interfere, or can restrain them from prosecuting their works under their charter: averring they have not transcended the power granted to them by congress, on the 26th of May, 1830. The circuit court dismissed the bill; and, on an appeal to the Supreme Court, the decree of the circuit court was affirmed.

The compact between Virginia and Maryland, in 1785, was made by the two states, in their character of states. The citizens, individually, of both commonwealths, were subject to all the obligations, and entitled to all the benefits conferred by that compact. But the citizens of each, individually, were, in no just sense, the parties to it. These parties were the two states of which they were citizens. The same power which established it, was competent to annul or to modify it. Virginia and Maryland, if they had retained the portions of territory which respectively belonged to them, on the right and left banks of the Potomac, could have so far modified this compact, as to have agreed to change any or all of its stipulations. They could, by their joint will, have made any improvements which they chose; either by canals along the margin of the river; or by bridges or aqueducts across it; or in any other manner whatsoever. When they ceded to congress the portions of the territory embracing the Potomac river within their limits, whatever the legislatures of Virginia and Maryland could have done by their joint will, after that cession, could be done by congress, subject only to the limitations imposed by the acts of cession.

The act of congress, which granted the charter to the Alexandria Canal Company, is in no degree a violation of the compact between the states of Virginia and Maryland; or of any of the rights that the citizens of either, or both states, claimed as being derived from it.

The Potomac river is a navigable stream, or part of the *jus publicum;* and any obstruction to its navigation would, upon the most established principles, be a *public nuisance*: A public nuisance being the subject of criminal jurisdiction, the ordinary and regular proceeding at law, is by indictment or information, by which the

[City of Georgetown v. The Alexandria Canal Company, &c.]

nuisance may be abated, and the person who caused it may be punished. A court of equity may take jurisdiction in cases of public nuisance, by an information filed by the attorney general. If any particular individual shall have sustained special damage from the erection of it, he may maintain a private action for such special damage; because, to that extent, he has suffered beyond his portion of injury, in common with the community at large.

While it is admitted by all, that the jurisdiction of a court of equity, in cases of nuisance, is confessedly one of delicacy, and accordingly the instances of its exercise are rare; yet it may be exercised in those cases in which there is imminent danger of irreparable mischief, before the tardiness of the law could reach it.

There are cases in which it is competent for some persons to come into a court of equity as plaintiffs, for themselves and others, having similar interests. Such is the familiar example of what is called a creditors' bill. But, in all these cases, the parties have an interest in the subject matter, which enables them to sue; and the others are treated as a kind of plaintiffs with those named, although they themselves are not named.

ON appeal from the circuit court of the United States, for the county of Washington, in the District of Columbia.

The appellants filed their bill in the court below, in July, 1836, stating, in substance, that they were deeply interested in the trade and navigation of the Potomac river, a common highway; the unobstructed use of which is secured by a compact in 1786, between the states of Virginia and Maryland. That the appellees, under the alleged authority of an act of congress of the 26th of May, 1830, are engaged at Georgetown, and within its corporate limits, in constructing an aqueduct over the said river. That the said aqueduct is designed to rest on massive stone piers, having their foundation on the solid rock at the bottom of said river. That to build said piers coffer dams are used around the site of them, with a double row of piling, the inner and outer rows of piling twelve or thirteen feet apart. That the appellees have finished one pier. That in building it, they filled up the space between the inner and outer rows of piling with clay and earth. The appellants expressed fears, that the clay so used, would injure the harbour of the town and channel of the river; but they were assured by the appellees that the clay so used, on completing the pier, should be taken away, and not permitted to be swept into the harbour and river. The bill further states, that, in the construction of the second pier, then in progress, the appellees not only used clay between said rows of piling, but threw large masses of clay and earth into the open river, outside the outer row of piles; that the current of said river and freshets, to which it was subject, had swept and

[City of Georgetown v. The Alexandria Canal Company, &c.]

would sweep said clay and earth into the channel and harbour; and had materially injured and would injure said channel and harbour. That the appellants had expended large sums of money, (in part grant-ed to them by congress,) in deepening the channel of the river below the town; and that the depth of water had been materially lessened, caused in part, and materially, by the said works of the appellees.

The bill further states, that the appellants, before filing their bill remonstrated against the use of said clay and earth in the open river, outside the dams, to the officer in charge of the work; but he asserted his right so to use it, and would use it when the safety of his works in his judgment, required; and was so instructed by his principals.

The bill further stated that the appellants had reason to believe, and did believe, that the said operation would be renewed, in the construc-tion of the six or more remaining piers of the aqueduct, if not arrest-ed by the order of the court; to the manifest injury, if not ruin, of their harbour and channel. The bill further averred that the appellees were without sufficient means to complete the work, and called for a statement of their funds. The bill also av rred the charter of the appellees, of May, 1830, to be unconstitutional, because it obstructed navigation. It prayed a perpetual injunction against the appellees in the use of clay and earth, inside or outside the dams; and against the progress of the work so conducted, in which they were engaged; and for further relief, &c. &c. .

The answer denied the right of the appellants to sue, and the juris-diction of the court, to enjoin for a public nuisance; and to give the relief prayed: denied that there was any injury, or damage; and if any, that it was within the corporate limits of Georgetown; and aver-red the validity of the act of congress, of 26th May, 1830, and their right to proceed under it. The answer avers that the said charter was granted with the knowledge and acquiescence of Georgetown; that a large amount of money had been obtained and expended on the work; and that appellees confidently believed, an ample amount had been, and would be furnished to complete it. They further aver-red, that they had employed skilful and scientific engineers; that they had adopted the most approved plan, (as set forth in the bill;) and that if any injury had occurred, or should occur to the river or harbour of Georgetown, which they denied, it was the neces-sary and inevitable result of the work itself. The answer admits, that, in building the second pier, in consequence of a freshet in June, 1836, alleged to have swept off the original deposite at the bottom

of the river round the pier, and thereby loosening the outer piles of the dam, they did throw in clay outside the outer rows of piles; to replace said deposite; that it was necessary to do so, and the only practicable means to save their work: that it was an emergency not likely again to arise; and that it did not and could not produce the mischiefs alleged, and apprehended by the complainants. To so much of the bill as averred the financial inability of appellees to complete the work, and called for a development of their resources, they demurred. Proof was taken on both sides, and filed with the bill and answer; the general replication filed, and the cause by consent set for final hearing. The court below refused to grant the injunction, and the relief prayed, and dismissed the bill: and the appellants thereupon appealed to this Court.

The case was argued by Mr. Key, for the appellants; and by Coxe and Mr. Jones, for the appellees.

For the appellants, it was contended: 1. That the court erred in refusing to grant the relief prayed for.

2. Because a wanton and irreparable injury to the navigation of the river, results from the manner of the defendants' construction of their work.

3. Because, by the compact between Maryland and Virginia, of 1786, and by the act of cession, of 1791; the free navigation of the river Potomac, and the rights of the citizens of Maryland and Virginia, and of the district, were secured.

4. If the charter authorizes the erection of works which destroy the rights and property of the complainants, it is void, as against the constitution of the United States; no compensation being provided for such injuries by the charter.

Mr. Justice BARBOUR delivered the opinion of the Court.

This is an appeal from a decree of the circuit court of the United States for the county of Washington, in the District of Columbia, dismissing the appellants' bill.

The appellants filed their bill in the court below, in behalf of themselves and the citizens of Georgetown, against the appellees; containing various allegations, the material parts of which, are substantially these: That the appellees, who were defendants in the court below, had been, and then were engaged in constructing an

aqueduct over the Potomac river, at Georgetown, within its corporate limits, immediately above, and west of the principal public and private wharves of the town; that the Potomac river, above and below the aqueduct, continuously outward to the sea, was a public navigable highway; that the free use of that river was secured to all the people, residing on its borders or interested in its navigation, by a compact between the states of Virginia and Maryland, in the year 1785; that Georgetown derived its chief support and prosperity from the trade of the Potomac; that large sums of money had been expended by the complainants, at the wharves of the town, in deepening the water on the bar across the main channel, immediately below the town, and north and west of the long bridge across the Potomac; that the defendants had constructed one massive stone pier, and were about to construct others; that by the use of clay and earth thrown in, to make close certain coffer dams, used by the defendants in the construction of the piers, the harbour has been injured, and the depth of water in the cut or channel through the bar below the town, has been diminished already, and that they apprehend serious injury in future from the same causes; that by the construction of their piers of stone, and in such a way, as greatly to increase the force of the current, other earth and mud have been, and will be washed down by the velocity of the current, so as to injure the wharves and harbour of the town, and impair the navigation of the river. The bill charges, that the aqueduct can be constructed without the use of clay and earth, from which so much injury is apprehended. It proceeds to state, in minute detail, the nature and character of the injury apprehended to the harbour, wharves, and navigation; and concludes with a prayer for an injunction prohibiting the defendants from further depositing earth and clay in the Potomac river, outside, or inside their coffer dams, or otherwise, to the injury of the navigation of the river and the harbour of Georgetown; and with a prayer also for general relief.

The defendants answered, denying that the complainants, the Corporation of Georgetown, had any right, title, or interest in the waters of the Potomac river, which they aver to be a public navigable river, and a common highway; they deny that the works, in the construction of which they are engaged, are within the corporate limits of Georgetown; they deny the right of the Corporation of Georgetown, to file the bill in behalf of the citizens of the town; they deny the jurisdiction of a court of equity, over nuisances in public rivers

and highways; and also its power to enjoin them from the prosecution of the works in which they are engaged, under their charter; they insist, that congress had full power to grant to them the charter of incorporation, and to authorize the construction of the works in which they are engaged. They aver that they have not transcended the power conferred by their charter, which was granted to them by an act of congress, passed on the 26th of May, 1830; which they exhibit as part of their answer. They then proceed to answer the bill at large upon its merits.

It is unnecessary to state the evidence in the case; because our opinion is founded upon considerations, independent of the facts which that evidence was intended to prove.

We shall forbear also from any expression of opinion upon some of the topics discussed at the bar; because, whilst they are important in their character, they have no bearing upon the principles on which our judgment proceeds.

We will now very briefly state them, and the conclusions which necessarily flow from them. The compact made in the year 1785, between Virginia and Maryland, was made by the two states, in their character as states. The citizens, individually, of both commonwealths, were subject to all the obligations imposed, and entitled to all the benefits conferred by that compact. But the citizens as such, individually, were in no just sense the parties to it: those parties were the two states, of which they were citizens. The same power which established it, was competent either to annul or to modify it. Virginia and Maryland, then, if they had retained the portions of territory respectively belonging to them on the right and left banks of the Potomac; could have so far modified this compact as to have agreed to change any or all of its stipulations. They could, by their joint will, have made any improvement which they chose, either by canals along the margin of the river, or by bridges or aqueducts across it, or in any other manner whatsoever

When they ceded to congress the portions of their territory, embracing the Potomac river, within their limits, whatsoever the legislatures of Virginia and Maryland could have done by their joint will, after that cession could be done by congress; subject only to the limitations imposed by the acts of cession.

We are satisfied, then, that the act of congress, which granted the charter to the Alexandria Canal Company, is in no degree a violation of the compact between the states of Virginia and Maryland, or of

any rights that the citizens of either, or both states, claimed as being derived from it.

Congress then, having the power, authorized the Alexandria Canal Company " to cut canals, erect dams, open feeders, construct locks, and perform such other works, as they shall judge necessary and expedient, for completing a canal, from the termination or other point on the Chesapeake and Ohio Canal, to such place in the town of Alexandria, as the board of directors shall appoint." Now, as one of its terminii was authorized to be, either the termination or some other point on the Chesapeake and Ohio Canal, and the other some place in the town of Alexandria; and as the Potomac lies between these terminii; the authority to construct an aqueduct was granted ex necessitate. But, if certainty required to be made more certain, this is done by the language of the ninth and fourteenth sections of the act of May 26th, 1830, granting the charter; in both of which the term aqueducts is used, in such a manner as incontestably to prove, that congress considered the power to construct them as given by the charter.

If, then, as we have said, congress had power to authorize the construction of an aqueduct across the Potomac; if so having the power, they have given to the Alexandria Canal Company the authority to construct it; and if, in the construction, that company has not exceeded the authority given them, either in the thing done, or in the manner of doing it, so as to produce the least injury or inconvenience practicable, consistently with the execution of the work; it would be difficult, as a legal proposition, to predicate of such a work, that it was unlawful, or that it was a nuisance; so as to justify a court in interfering to prevent its progress towards completion.

It is unnecessary, however, to prosecute this inquiry, because there is a view of this subject which we think decisive of the case.

Were it even admitted that the Canal Company had exceeded the authority under which they are acting, nevertheless, as the Potomac river is a navigable stream, a part of the jus publicum, any obstruction to its navigation would, upon the most established principles, be what is declared by law to be a *public nuisance.* A public nuisance being the subject of criminal jurisdiction, the ordinary and regular proceeding at law is by indictment or information, by which the nuisance may be abated; and the person who caused it may be punished. If any particular individual shall have sustained special

[City of Georgetown v. The Alexandria Canal Company, &c.]

damage from the erection of it, he may maintain a private action for such special damage; because to that extent he has suffered beyond his portion of injury, in common with the community at large. 5th Bac. Abridg. Nuisance, B. p. 51. 2d Lord Raym. 1163.

Besides this remedy at law, it is now settled, that a court of equity may take jurisdiction in cases of public nuisance, by an information filed by the attorney general. This jurisdiction seems to have been acted on with great caution and hesitancy. Thus, it is said by the Chancellor, in 18th Vesey, 217, that the instances of the interposition of the court were confined and rare. He referred, as to the principal authority on the subject, to what had been done in the court of exchequer, upon the discussion of the right of the attorney general by some species of information, to seek on the equitable side of the court, relief as to nuisance, and preventive relief.

Chancellor Kent in 2d John. Chan. 382, remarks, that the equity jurisdiction, in cases of public nuisance, in the only cases in which it had been exercised, that is, in cases of encroachment on the king's soil, had lain dormant for a century and a half; that is, from Charles I. down to the year 1795.

Yet the jurisdiction has been finally sustained; upon the principle that equity can give more adequate and complete relief than can be obtained at law. Whilst, therefore, it is admitted by all that it is confessedly one of delicacy; and accordingly, the instances of its exercise are rare, yet it may be exercised in those cases in which there is imminent danger of irreparable mischief before the tardiness of the law could reach it.

The court of equity, also, pursuing the analogy of the law, that a party may maintain a private action for *special damage*, even in case of a public nuisance, will now take jurisdiction in case of a public nuisance, at the instance of a private person; where he is in imminent danger of suffering a special injury, for which, under the circumstances of the case, the law would not afford an adequate remedy. Amongst other cases, this doctrine is laid down in the case of Crowder v. Tinkler, 19 Vesey, 616. In that case, p. 622, the chancellor says, " Upon the question of jurisdiction, if the subject was represented as a mere public nuisance, I could not interfere in this case, as the attorney general is not a party; and if he was a party upon the dicta, unless it was clearly a public nuisance generally, the court would not interpose by injunction until it had been tried at law. The complaint is, therefore, to be considered as of not

a public nuisance simply; but what, being so in its nature, is attended with extreme probability of irreparable injury to the property of the plaintiffs, including, also, danger to their existence; and on such a case, clearly established, I do not hesitate to say an injunction would be granted."

The principle is also distinctly asserted and acted on by Chancellor Kent, in the case of Corning and others v. Lowerre, 6 John. Chan. 439. In that case, a bill was filed for an injunction to restrain the defendant from obstructing Vestry street, in the city of New York, and averring that he was building a house upon that street, to the great injury of the plaintiffs, as owners of lots on and adjoining that street; and that Vestry street had been laid out, regulated and paved, for about twenty years.

The injunction was granted: the Chancellor said, that here was a special grievance to the plaintiffs, affecting the enjoyment of their property and the value of it. The obstruction was not only a common or public nuisance, but worked a special injury to the plaintiffs.

The principle then is, that in case of a public nuisance, where a bill is filed by a private person, asking for relief by way of prevention, the plaintiff cannot maintain a stand in a court of equity; unless he avers and proves some special injury.

With this principle as our guide, let us now examine the pretensions of the appellants in this case. Who are they? Not, indeed, a private person, but a corporation. They profess to come into court for themselves, and for the citizens of Georgetown. Now, it is not even pretended that, in their character of a corporation only, they have any power or authority given to them by their charter, to take care of, protect, and vindicate, in a court of justice, the rights of the citizens of the town, in the enjoyment of their property, or in removing or preventing any annoyance to it. Nor does such a power attach to them in their corporate character, upon any principle of the law in relation to corporations. The complainants, then, must, as in the case of private persons, to maintain their position in a court of equity for relief against a public nuisance, have averred and proved, that they were the owners of property liable to be affected by the nuisance, and that, in point of fact, were so affected, so as that they thereby had suffered a special damage. Now, there is no such averment in this bill. The appellants seem to have proceeded on the idea, that it appertained to them, as the corporate authority in

Georgetown, to take care of and protect the interests of the citizens. In this idea we think they were in error; and that they cannot, upon any principle of law, be recognised as parties competent in court to represent the interests of the citizens of Georgetown. Nor is the difficulty obviated by associating with them the citizens of Georgetown, as persons in whose behalf they sue. There are indeed cases, in which it is competent for some persons to come into a court of equity, as plaintiffs for themselves and others, having similar interests: such is the familiar example of what is called a creditors' bill. But in that, and all other cases of a like kind, the persons, who by name, bring the suit, and constitute the parties on the record, have themselves an interest in the subject matter, which enables them to sue, and the others are treated as a kind of co-plaintiffs with those named, although they themselves are not named: but in this case, it has been already said, that the appellants have no such interest as enables them to sue in their own name, and consequently the whole analogy fails. Moreover, if the citizens of Georgetown were even parties on the record; the objection would equally lie against them, unless they could show a special damage as a ground to stand upon.

With these views, we are of opinion that the decree of the court below, dismissing the appellants' bill, is correct; it is therefore affirmed, with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is decreed and ordered by this Court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed, with costs.