JACOB ANDERSON, APPELLANT, *v.* EUNICE J. DOTY, RESPONDENT.

*Bawdy house — its continuance will not be restrained by an injunction, upon the application of a party whose property is depreciated in value by it.*

The complaint in this action alleged that the plaintiff was the owner of certain houses in a street in the city of Rochester; that the defendant had for many years kept, and still did keep, a bawdy house; that the house so kept was a disorderly house and a nuisance, and that it was situated on the same side of the street as the plaintiff's houses and some twelve rods from them, that by reason of the maintaining of such bawdy house the plaintiff's houses were rendered less salable, and that he had been prevented from procuring desirable and responsible tenants for them, whereby he had sustained damages to the amount of $3,000.

*Held*, that these facts did not entitle him to an injunction restraining the defendant from continuing the nuisance maintained by her. (BARKER, J., dissenting.)

APPEAL from an order, made at a Special Term, dissolving an injunction restraining the defendant from keeping and maintaining a house of prostitution on her premises in the city of Rochester.

The injunction order was granted *ex parte* upon a verified complaint, and an affidavit on the part of the plaintiff supporting the material averments thereof.

Upon the dissolution of the injunction at Special Term the following opinion was delivered by RUMSEY, J.:

*Quincy Van Voorhees*, for the appellant.

*C. M. Allen*, for the respondent.

RUMSEY, J.:

The defendant moves to vacate this injunction upon the papers on which it was granted. Upon the facts alleged there is no doubt that the house of the defendant is a common nuisance. It is situated as alleged, at No. 91 Exchange street. The house of plaintiff, in which he resides, is at No. 101, and he also owns Nos. 99 and 101½ on the same street. He alleges that by reason of the keeping of the bawdy house of the defendant, the neighborhood has become disreputable, and much less desirable as a place of residence than it would have been, and the plaintiff has been unable to find a person to occupy or pay rent for his said houses during a considerable time; and at other times he has been able to get tenants for them only by accepting undesirable and irresponsible tenants, and has at all times been compelled to accept a much smaller rental than the houses would have been worth were it not for the existence and effect of the nuisance maintained by the defendant.

The nuisance is said to consist in the fact that the defendant's house " has been and is kept as a dwelling place for lewd women and prostitutes, and a resort for lewd men and women for lewd purposes, and as a bawdy house, and a disorderly house, and a nuisance."

There is no allegation of any noise, or any physical discomfort or tangible injury to the persons of the occupants of plaintiff's houses, or to the property, but the injury complained of is entirely consequential in its nature, arising from the fact that decent people will avoid such places, however quietly conducted, because of the inconveniences which they apprehend may occur, although such apprehensions may never be realized. The defendant's counsel bases his motion upon the ground that a private action will not lie to restrain a public nuisance, unless the plaintiff suffers an injury by it to his person or property different in character from that common to all citizens, and that this particular injury must be some sensible physical discomfort or visible injury to property. The general rule

is well settled that a private individual cannot restrain a public nuisance by his private action unless he suffers damage different in kind from that which the nuisance causes all other people. (Coke, 56 *a*; *Stetson* v. *Faxon*, 19 Pick., 147.) But this private injury must be physical, that is, it must be offensive to the senses, or endanger health, or render the use of property uncomfortable, or actually interfere with its use. (Wood on Nuisances, 4; *Catlin* v. *Valentine*, 9 Paige, 575; *Brayton* v. *Fall River*, 113 Mass., 219–229; *St. Helen's Smelting Co.* v. *Tipping*, 11 H. L. Cas., 642.)

Mere liability to injury is not sufficient. (*Blackwell* v. *Old Colony R. R. Co.*, 122 Mass., 1–3; *Milarkey* v. *Foster*, 25 Am. R. 531 and note; *Stetson* v. *Faxon*, 31 Am. Dec., 123, and note.) Nor is mere consequential injury, because plaintiff's premises are rendered less desirable or less valuable, where no physical damage has been done to the property or no personal discomfort sustained by the occupants, a ground for private action. (*Lansing* v. *Smith*, 8 Cow., 146, 167; *Ricket* v. *Metro. Ry. Co.*, 5 B. & S., 149.) It may be quite difficult to lay down any general rule. But I think it is safe to say, as is said by Wood, it is not enough that it diminishes the value of surrounding property. It is not enough that it renders other property less salable, or that it prevents one from letting his premises for as large a rent as before, or to as responsible or respectable tenants. (Wood on Nuisances, 4; Bigelow Ldg. Cas. on Torts, 467, *et seq.*)

In this case there are alleged no offensive sights or sounds from defendant's house, but the injury is caused because the existence of the nuisance gives the neighborhood a bad name. I do not think this is sufficient injury to plaintiff to enable him to maintain this action.

But there are reasons of public policy and propriety why in my judgment this action should not be maintained by the plaintiff. The house kept by defendant is a nuisance, not because it is a source of discomfort to the immediate neighborhood, but because its probable and natural consequence is harmful to the social and moral welfare of the public. It is a nuisance because it is a crime, and it can only cease to be a nuisance when it is abated.

I do not think that courts of equity are the proper tribunals in which to do this. The usual and customary means, and those

always heretofore employed, are set in motion by the courts which administer the criminal law, whose machinery is sufficient to give to the community full relief in a case of this kind, and at the same time to administer such punishment as will prevent the recurrence of the evil. It is the duty of the plaintiff to apply to those tribunals to which the law has given the power not only to punish the guilty persons, but to abate the nuisance (Code Crim. Proc. § 953), and to execute its judgment to that effect. I cannot doubt that if the plaintiff, and all persons aggrieved by the existence of such places, would resort to the criminal courts, the law would be promptly and rigorously enforced. At all events the duty of dealing with offenses of the kind charged against defendant is confined to the criminal courts, and should not be assumed by, nor imposed upon courts of equity.

The case of *Hamilton* v. *Whitridge* (11 Md., 128) may possibly be sustained as an exercise of the power of a court of equity to prevent the erection of a nuisance, but I do not think it is an authority for the issue of a mandatory injunction to punish a crime already committed, or to prevent the commission of a new crime, or to abate a nuisance which can be abated by the judgment of the criminal court.

The motion to vacate the injunction must be granted, but I shall give no costs of the motion.

At the General Term the order dissolving the injunction was affirmed upon the opinion delivered at the Special Term, after hearing Quincy Van Voorhees for the appellant, and C. M. Allen for the respondent. Judge BARKER dissenting and delivering the following opinion:

BARKER, J. (dissenting):

It is charged in the complaint that the defendant, in a certain house located in the central part of the city of Rochester, does and has for many years kept and maintained a bawdy house, as a dwelling place for lewd women and as a resort for common prostitutes and licentious men, who frequent the same for lewd purposes, and threatens to continue the use of the house for such purposes, and that the house is disorderly, and for these reasons is a nuisance. Twelve rods from this house, on the same street and on the same

side thereof, the plaintiff is the owner of a block of buildings consisting of three dwelling houses, one of which he occupies as a family residence and the other two are rented by him as dwellings or as boarding houses; that by the reason of maintaining and keeping of such bawdy house by the defendant, the plaintiff's property is much less valuable as a place of residence, and the plaintiff has been unable during a considerable portion of the six years last past to find tenants to occupy and pay rent for his said houses, and at other times he has been unable to secure desirable and responsible tenants, and that the rental value of the property has been greatly diminished, and that he has suffered damages by reason thereof in the sum of $3,000. The affidavits which accompany the complaint, and were read on granting the preliminary injunction, support these averments, and the defendant did not on the application to dissolve the injunction dispute the same. Upon these admitted facts the question is presented, whether the plaintiff is entitled to relief by injunction, for the purpose of restraining the continuance of the nuisance maintained by the defendant on her property.

The keeping of a bawdy house is confessedly a nuisance. The law detests and abhors the offense to good morals which such an occupation encourages, and spurns every attempt to give it lawful recognition. It brands the person who maintains it as a criminal, and the offender may be prosecuted by indictment and punished by fines and imprisonment. That the plaintiff may maintain an action for the damages he has sustained by reason of the nuisance, and is also entitled to an injunction restraining its continuance, is fully recognized and well established by the decisions in this country and in England. (2 Story's Eq. Jur., §§ 921, 924 ; *Soltau* v. *De Held*, 9 Eng. Law and Eq., 104 ; *Walter* v. *Selfe*, 20 Law Jour. Ch., 433 ; *Corning* v. *Lowerre*, 6 Johns. Ch., 439 ; *Sampson* v. *Smith*, 8 Simons, 272 ; *Georgetown* v. *Canal Co.*, 12 Peters, 91 ; *Davis* v. *Mayor, etc.*, 14 N. Y., 526 ; *Hutchins* v. *Smith*, 63 id., 251 ; *Peck* v. *Elder*, 3 Sandf., 126 ; *Francis* v. *Schoellkopf*, 53 N. Y., 152 ; *Wesson* v. *Washburn Iron Co.*, 13 Allen, 95 ; *Baltimore and Potomac R. R. Co.* v. *Baptist Church*, 108 U. S., 317 ; *Pierce* v. *Dart*, 7 Cow., 611 ; *Rose* v. *Miles*, 4 Maule & Sel., 101 ; *Clarke* v. *Blackmar*, 47 N. Y., 152 ; *Hamilton* v. *Whitridge*, 11 Md., 128 ; *Givens* v. *Van Studdiford*, 72 Mo., 129 ; S. C., 4 Mo. App. R., 498.)

The principle established by these decisions is, when the act complained of, or which is apprehended, besides being a public nuisance, would be injurious to a private person, he may maintain an action at law for damages, or a bill in equity for an injunction in his own name. The rule has its foundation in the precept that every person is bound to use his own property in such manner as not to injure the property of another, or the reasonable and proper enjoyment of it. The difficulty lies in the application of this principle. The true limit of the rule within which its operation is allowed is to be found in the facts of each particular case. If the right invaded or impaired is a common and public right, open to the use and enjoyment of all, then the person who maintains the nuisance is not liable to a private action at the suit of one who has suffered no damage therefrom, except such as is common to the entire community, though he is liable at the suit of one who has sustained damage peculiar to himself.

Whether the facts alleged in the complaint and supported by the affidavits make a case for upholding the injunction is the only serious question presented. Tested by the cases herein, the facts are found to be similar in all essential respects to those established in this. There is no doubt but what an action at law may be maintained for damages. Upon principle and authority I think a suit in equity for an injunction, restraining the continuance of the nuisance may also be maintained, and is a fit and appropriate remedy, to apply to the case with a view of suppressing the nuisance maintained by the defendant. The law gives the injured party an action at law for his damages, and a court of equity has jurisdiction in an appropriate case, for the reason that a serious and substantial injury has been done to the plaintiff's property in consequence of the wrongful acts of the defendant. The law does not give the plaintiff a right of action because the defendant is an immoral person and lives a life of infamy, but because she, at a particular place, well known to the public, carries on an illegitimate business, which amounts to a public nuisance, which causes an injury to the plaintiff's property, depreciating its pecuniary value so long as the nuisance remains. In support of the position that the injury to the plaintiff's property is special, in contradistinction to the injury which is common to all the public, and the case as now presented

falls within the rule, I refer to some of the leading cases on the subject.

In *Francis* v. *Schoellkopf* (*supra*) the defendant carried on the business of tanning and boiling putrid animal matter, in such a way as to create a nuisance and offensive smells, to such a degree as to render the house of the plaintiff nearly unfit for habitation, by means of which he was unable to rent one of them at all, for a portion of the time, and for the residue was obliged to rent it for a less sum than she could otherwise have obtained therefor, and the one in which she and her family resided was made disagreeable and uncomfortable. One house was situated about seventy-five feet from the tannery building, and the evidence showed that other houses in the vicinity were affected similar to those of the plaintiff. It was an action at law and the plaintiff had a verdict. The defendant insisted that as the stench injured a large number of houses, the injury was common, and therefore no one could maintain an action for particular injury, the only remedy being an indictment for the common injury to the public. Judge GROVER, in delivering the opinion of the court, answered the argument in a few brief and terse sentences, by saying that "the error of this is obvious, both upon principle and authority. The idea that if by a wrongful act a serious injury is inflicted upon a single individual, a recovery may be had therefor against the wrong-doer, and that if, by the same act, numbers are so injured, no recovery can be had by any one, is absurd. This, stripped of verbiage, is the ground of the motion. It is said that holding the defendant liable to respond in an action to each one injured, will lead to a multiplicity of actions. This is true, but it is no defense to a wrong-doer when called upon to compensate for the damages sustained from his wrongful act, to show that he, by the same act, inflicted the like injury upon numerous other persons. The position is unsustained by any authority."

In *Baltimore and Potomac Railroad Company* v. *The Baptist Church*, the facts were these: The railroad company located its engine-house and repair shops on premises adjoining the church property, and by reason of the proximity of the defendants works and the noise, smoke, cinders and dust, which they created, the rental value of the church property was diminished and the attendance lessened, and access thereto made more hazardous. The plain-

tiff recovered a verdict, which was sustained, and the court remarked, in delivering its opinion, that if the nuisance was continuous in its character equity would restrain it.

In *Wesson* v. *The Washburn Iron Company*, the action was to recover damages resulting to an inn from a nuisance, by carrying on works and operating machinery in the neighborhood, which shook the building and prevented guests from sleeping, and the court stated the rule as follows : " When the alleged nuisance would constitute a private wrong, by injuring property or health, or creating personal inconvenience or annoyance, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong was committed in a manner and under circumstances which would render the guilty party liable to an indictment for a common nuisance, although all persons owning estates in the vicinity have sustained injuries from the same cause. It is only when the nuisance complained of is an invasion of some common or public right that the injury is confined to a public prosecution."

In *Givens* v. *Van Studdiford*, the action was on the law side of the court to recover damages sustained by the plaintiff, in consequence of the defendant's maintaining a bawdy house in the neighborhood adjacent to the plaintiff's property, and the court held that it was a private as well as a public nuisance, and the plaintiff was entitled to recover whatever damages it had caused him, reversing the decision of the court below, which was in the defendant's favor.

An infinite number of cases might be cited, where the rule has been applied, to cases presenting a different combination of facts and circumstances, but of the same general import, resulting in an injury to the property of the complaining party.

That courts of equity have jurisdiction in a similar class of cases, and may, by the process of injunction, suppress the nuisance, is equally well established.

In *Corning* v. *Lowerre*, an injunction was granted upon the ground, that the obstruction was not only a common and public nuisance, but for the reason that it worked a special injury to the plaintiffs

In *Clarke* v. *Blackmar*, the plaintiff's premises were situated 140 feet from the place where the defendants maintained an obstruction to the travel in a public street, which somewhat impaired the rental

value of the plaintiff's property, by making it more difficult of access, and the court said that the plaintiff's damages were such, and his premises so near to the obstruction, that he could maintain an action in a court of equity, compelling the defendants to remove the obstructions unlawfully placed in the street.

In *Peck* v. *Elder*, several persons, each owning separate tenements affected by the nuisance, joined as plaintiffs in a suit to restrain its continuance by an injunction. The defendants on their own premises, not immediately adjoining the premises of the plaintiffs, erected and operated a smelting house, and the stench and vapors therefrom amounted to a nuisance in the neighborhood and depreciated the rental value of the plaintiffs' property, and the chancellor, in upholding a preliminary injunction, said that courts of equity have jurisdiction to restrain nuisances which are injurious to the property of individuals, and that the law on that subject was well settled and did not admit of a discussion.

In *Sampson* v. *Smith*, the plaintiff sustained his bill. It was for filling the street that passes the plaintiff's draper shop with smoke and soot from a steam-engine, which the defendant used on his place of business, on the opposite side of the street.

*Hamilton et al.* v. *Whitridge*, was a suit in equity, to restrain the defendant from maintaining a bawdy house on his premises, located in the neighborhood of the respective houses of the several plaintiffs in the city of Baltimore. Some of them lived on a different street and their premises were not adjoining the premises on which the defendant maintained the nuisance, the court held it had jurisdiction to suppress the nuisance, and gave final judgment in favor of the plaintiffs. The argument of the court is so sound, just and sensible, that it should dispel all doubt upon the question as to the power and jurisdiction of a court of equity in this class of cases.

As courts of equity have jurisdiction to abate and restrain common nuisances, such as pig-stys, slaughter-houses, lime kilns, tanneries, tallow factories, when in consequence thereof special damages are sustained by individuals, which are not common to the public, no reason or argument has been presented, satisfactory to my mind, why jurisdiction should be withheld, when invoked at the suit of injured parties, to suppress a nuisance so offensive and intolerable

as the one which the defendant maintains and defiantly threatens to continue.

I am in favor of reversing the order of the Special Term and restoring the injunction.

Order dissolving injunction affirmed, on opinion of Mr. Justice RUMSEY, at Special Term, with ten dollars costs and disbursements.