# UNITED STATES EX REL. ALSOP PROCESS COM-PANY *v.* WILSON.

MANDAMUS; PUBLIC OFFICERS.

1. Where the Secretary of Agriculture, after an investigation, renders and promulgates a decision to the effect that flour bleached by a certain process is an adulterated product under the food and drugs act of Congress of June 30, 1906 (34 Stat. at L. 768, chap. 3915, U. S. Comp. Stat. Supp. 1907, p. 928), and announces his intention to recommend the prosecution of those engaged in its sale and manufacture, a company manufacturing machinery for bleaching flour under a patented process has no such interest in the subject-matter of the Secretary's action as will entitle it to maintain a petition for mandamus to compel him to revoke his decision, and not to circulate copies of it, although the indirect effect of such decision and its promulgation has been and will be to cause millers throughout the country to cease purchasing the relator's machinery.

2. The rule permitting private parties whose rights are directly jeopardized to maintain mandamus to compel a public duty is a salutary one, but it should not be enlarged to such an extent as to permit interference with the operations of the government by those whose rights are only remotely and indirectly affected.

No. 2021. Submitted May 22, 1909. Decided June 1, 1909.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia, overruling his demurrer to an answer to a rule to show cause why the writ of mandamus should not be issued.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from the supreme court of the District over-ruling the demurrer of the relator, Alsop Process Company, to

an answer of the defendant, James Wilson, Secretary of Agriculture, appellee here, to a rule to show cause why a mandamus should not be issued against him.

In its petition the relator states that it is a corporation of the State of Missouri, engaged in the manufacture of flour-bleaching machinery, which is sold throughout the United States and elsewhere, and is extensively used by millers for bleaching flour. The process for which this machinery is designated is known as the "Alsop process," and is covered by patent which is owned by the relator. The bleaching of flour by this process is accomplished by the passage of pure air through a flaming discharge of electricity, and the application of the resultant gaseous medium to the freshly milled flour as the latter passes through an agitator. The flour thus treated, the relator states, has no substance mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength, is not deprived of any valuable substance, nor has it been mixed, colored, or treated in any manner whereby inferiority is concealed, and contains no deleterious ingredient or other element injurious to health. The relator further states that prior to November 18, 1908, the Secretary of Agriculture inserted, or caused to be inserted, in certain milling journals and other periodicals throughout the country, a notice to the effect that a hearing would be held on the subject of bleached flour at the Department of Agriculture on November 18, 1908, at which time the relator says it was present by a duly authorized officer and by an attorney, and that the hearing was also attended by many millers from various parts of the country; that this hearing was continued five days, and testimony for and against said process was introduced; that the attorney for the relator conducted the case for the millers favoring the bleaching process; that the relator's manager gave extended testimony at this hearing; that the entire proceedings were transcribed by a stenographer and made accessible to the public generally. This hearing, the relator avers, was without color of authority of law. The petition further states that, on the 10th of December, 1908, the said Secretary of Agriculture

unlawfully, arbitrarily, and oppressively, and without color or right of law, issued the following bulletin:

F. I. D. 100.                    Issued December 10, 1908.
United States Department of Agriculture,
Office of the Secretary,
Board of Food and Drug Inspection.

Food Inspection Decision 100.

Bleached Flour.

Flour bleached with nitrogen peroxide, as affected by the food and drugs act of June 30, 1906, has been made the subject of a careful investigation, extending over several months.

A public hearing on this subject was held by the Secretary of Agriculture and the board of food and drug inspection, beginning November 18, 1908, and continuing five days. At this hearing those who favored the bleaching process and those who opposed it were given equal opportunities to be heard.

It is my opinion, based upon all the testimony given at the hearing, upon the reports of those who have investigated the subject, upon the literature, and upon the unanimous opinion of the board of food and drug inspection, that flour bleached by nitrogen peroxide is an adulterated product under the food and drugs act of June 30, 1906; that the character of the adulteration is such that no statement upon the label will bring bleached flour within the law; and that such flour cannot legally be made or sold in the District of Columbia or in the territories; or be transported or sold in interstate commerce; or be transported or sold in foreign commerce except under that portion of sec. 2 of the law which reads:

* * * Provided that no article shall be deemed misbranded or adulterated within the provisions of this act when intended for export to any foreign country and prepared or packed according to the specifications or directions of the foreign purchaser, and no substance is used in the preparation

or packing thereof in conflict with the laws of the foreign country to which said article is intended to be shipped; * * *

In view of the extent of the bleaching process and of the immense quantity of bleached flour now on hand or in process of manufacture, no prosecutions will be recommended by this Department for manufacture and sale thereof in the District of Columbia or the territories or for transportation or sale in interstate or foreign commerce, for a period of six months from the date hereof.                         James Wilson,
                              Secretary of Agriculture.
Washington, D. C., December 9, 1908.

The promulgation and circulation of this bulletin, the relator states, has worked irreparable harm and injury to it, and in effect deprived it of its property without due process of law, "in that, since the issuance and promulgation of said unlawful decision aforesaid, by the respondent herein, and by reason thereof, your petitioner has been unable to sell its patented process and apparatus aforesaid, the prospective purchasers of said patented process and apparatus aforesaid refusing to buy and install the same for fear that they or their customers will, upon the recommendation of the Secretary of Agriculture, be prosecuted for manufacturing or selling an adulterated food product in violation of the provisions of said food and drugs act, June 30, 1906." The petition closes with a prayer that the writ of mandamus issue to compel the Secretary of Agriculture to withhold recommendation of prosecutions against manufacturers of and dealers in flour bleached by said Alsop process; to revoke, cancel, and annul said decision of said Secretary, and not to deliver or circulate additional copies thereof, and that the Secretary of Agriculture be commanded to proceed relative to the subject of bleached flour in strict conformity with said food and drugs act and the regulations of the Department promulgator thereunder.

A rule to show cause was issued. In the answer filed by the Secretary he states "that it does not appear by the said petition

that the said relator has any right, title, or interest in the matters
affected by the judgment and action of your respondent, re-
ferred to in the said petition, and is not a party to nor legally
interested in the proceedings in which said judgment and action
of your respondent have been made." He admits the relator
owns the patent known as the "Alsop process" for bleaching
flour, but claims that its patented rights are wholly collateral to
the right of said Secretary of Agriculture to decide whether
flour bleached by the use of nitrogen peroxide is deleterious and
adulterated within the meaning of said food and drugs act;
that the patenting of said process confers no right on relator,
and gives it no status to compel the respondent to change or re-
voke his decision that flour so bleached is adulterated. The an-
swer denies that the effect on flour by the use of said process is as
stated in the petition; on the contrary, the answer states "that
the flour which is bleached is reduced and lowered in its quality
and strength; that the said flour is so artificially colored as to
conceal inferiority, and that it contains a poisonous and deleteri-
ous ingredient which has been added, and that the said flour is
deleterious and injurious to health." The respondent, in his
answer, further says "that the bleaching of the said flour is
effected by nitrogen peroxide, and that the resultant product is
deleterious and is adulterated within the meaning of the afore-
said food and drugs act approved June 30th, 1906;" that, for
many months prior to November 18, 1908, the respondent had
made an exhaustive inquiry into the character, composition, and
purity of bleached flour, and had caused the matter to be investi-
gated exhaustively by the bureau of chemistry of his Depart-
ment, and "that, from all the evidence adduced, it was conclu-
sively established that flour bleached with nitrogen peroxide was
adulterated within the meaning of said food and drugs act;"
that, in the exercise of abundant caution, however, the Secretary
decided to renew the investigation, and to consider the matter
more fully before finally deciding, under the authority of said
act, whether said bleached flour was adulterated; that accord-
ingly he issued a notice for said public hearing; that this hear-
ing was entirely advisory; and that the millers and manufactur-

ers and others who attended did so voluntarily. The result of this hearing, the Secretary says, was to put him in possession of further and additional evidence relative to the subject; that this hearing was authorized both impliedly, by the provisions in said food and drugs act, and expressly, by the provisions of the agricultural appropriation act of Congress of May 23, 1908; that, after due consideration, he decided that flour bleached by the use of nitrogen peroxide is adulterated within the meaning of said food and drugs act, and forbidden by the terms of said act, and that he thereupon announced and published said decision of December 10, 1908; that this decision in no wise mentioned or in any way relates to the relator, and that, therefore, it has no status to seek any relief or redress in connection therewith. The Secretary, in his answer, denies the averments of the petition that his action was without right or color of law, denies the jurisdiction of the court to grant the writ, and states that he "passed no judgment upon the machinery of the relator, and has no jurisdiction over the same, nor concern therewith. The said relator is not an owner of bleached flour nor a manufacturer of the same. The judgment of the said respondent has to do only with the bleached flour, the product itself, and has no jurisdiction over or concern in one of the kinds of process by which the said product may be secured. And respondent submits that the claims of the said relator are wholly collateral, and that its petition fails to show any legal damage."

To this answer a demurrer was filed, which was overruled, and, relator choosing to stand upon its demurrer, final judgment was entered, and this appeal taken.


*Mr. Bruce S. Elliot, Mr. Sam B. Jeffries,* and *Mr. George W. Rea* for the appellant.


*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stuart McNamara,* Special Assistant to the Attorney General, for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The first question to be disposed of is whether the interest of the relator in the subject-matter involved is of such a nature as to entitle it to maintain this proceeding. The decision of the Secretary of Agriculture, which is here sought to be challenged, is to the effect that flour bleached by nitrogen peroxide is an adulterated product under said food and drugs act. Neither the relator nor its process is mentioned in this decision. The relator is neither the owner nor the manufacturer of bleached flour. Its sole excuse for attempting to stay the hand of the Secretary is that, since the promulgation of this decision by the Secretary, it has been unable to sell its patented process and apparatus, owing to the fear of prospective purchasers that, upon the recommendation of the Secretary, they will be prosecuted for manufacturing or selling an adulterated food product.

Whilst it is true that there is a distinction between cases where the extraordinary aid of mandamus is invoked merely for the purpose of enforcing or protecting a private right and cases where the purpose of the application is the enforcement of a purely public right, the people at large being the real party in interest (High, Extr. Legal Rem. Par. 430; 26 Cyc. Law & Proc. p. 404 and cases there cited), it has never been held, at least, to our knowledge, that such an indirect and collateral interest as is here shown will sustain a petition for the writ.

*Union P. R. Co.* v. *Hall,* 91 U. S. 343, 23 L. ed. 428, and *Board of Liquidation* v. *McComb,* 92 U. S. 531, 23 L. ed. 623, in our opinion, do not sustain appellant's contention that it has a sufficient interest to entitle it to institute this proceeding. In the former case it was held that merchants in Iowa having frequent occasion to receive and ship goods over the Union Pacific R. R. Co. might, without the intervention of the Attorney General of the United States, institute a proceeding under an act of Congress which conferred upon the proper circuit court of the United States jurisdiction to hear and determine all cases of mandamus to compel said railroad company to operate its road as required by law. It will thus be seen that a duty was laid

upon the railroad company to operate its road in the interests of the public. Its failure in that regard wrought a direct injury to the merchants who were permitted to institute the proceeding. The court went no further than to hold that the writ of mandamus may be issued at the instance of a private relator in all cases "where the defendant owes a duty, in the performance of which the prosecutor has a peculiar interest," and also "in case of applications to compel the performance of duties to the public by corporations." In the latter case, the relator was the holder of bonds directly affected by the funding act, the carrying out of which he sought to have restrained.

We have carefully examined the other cases cited by relator on this point, and find that they go no further than the cases above reviewed.

The relator, as a corporate entity, has no interest in the enforcement of duties owing by the Secretary to the public. It seeks to arrest the operations of an executive Department of the government solely because the indirect effect of the promulgation of an opinion by the head of that Department has been to cause millers to cease purchasing relator's machinery. In all the cases relied upon by relator, mandamus was granted to secure to the relators rights which they were entitled personally to enjoy. Measured by this test, it is apparent that the relator has no such interest in the subject-matter of this controversy as to entitle it to the writ. Being neither an owner nor a manufacturer of bleached flour, its legal rights were not involved or invaded by the action of the Secretary. It is a mere volunteer in this proceeding, and, as such, is without standing.

There is some analogy between a suit in equity for the abatement of a public nuisance and the present case. Yet it is well settled that such a suit will not be sustained unless the complainant shows special, direct, and material damages. *Georgetown* v. *Alexandria Canal Co.* 12 Pet. 91, 9 L. ed. 1012; *Irwin* v. *Dixon,* 9 How. 10, 13 L. ed. 25; *Pennsylvania* v. *Wheeling & B. Bridge Co.* 13 How. 518, 14 L. ed. 249; *Mississippi & M. R. Co.* v. *Ward,* 2 Black, 485, 17 L. ed. 311. In the case last cited it was said: "A bill in equity to abate a public nuisance, filed by

one who has sustained special damages, has succeeded to the former mode in England of an information in chancery, prosecuted on behalf of the Crown, to abate or enjoin the nuisance as a preventive remedy. The private party sues rather as a public prosecutor than on his own account; and unless he shows that he has sustained, and is still sustaining, individual damage, he cannot be heard."

The rule permitting private parties whose rights are directly jeopardized to maintain mandamus to compel a public duty is a salutary one, but it should not be enlarged to such an extent as to permit interference with the operations of the government by those whose rights are only remotely and indirectly affected.

Having determined that the relator's interest in the subject-matter involved is too remote to entitle it to institute this proceeding, it becomes unnecessary to consider any other question.

The order is, therefore, affirmed, with costs. *Affirmed.*