**SULLIVAN v. AMERICAN MFG. CO. OF MASSACHUSETTS.**

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2814.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This is an appeal in an action at law instituted by Mrs. Lucy C. Sullivan, as plaintiff, to recover damages to property and health sustained as the result of the operation by the defendant, American Manufacturing Company, of a bagging factory near her property in the city of Charleston, S. C. At the close of her evidence, the court below sustained defendant's motion for an involuntary nonsuit, and from judgment thereon plaintiff appealed. She died pending the appeal, and her administrator and heirs at law have been made parties in her stead.

The evidence taken in the light most favorable to plaintiff, as it must be in considering the motion to nonsuit, is sufficient to establish the fact that plaintiff has been subjected to annoyance and inconvenience and that her property has been depreciated in value as a result of the operation of defendant's factory in the neighborhood of her home, which is situate on Meeting street in the residential district of the city of Charleston. Defendant's plant is less than a block distant, but prior to 1926 it caused no annoyance, because defendant's operations were confined to the weaving of jute. In 1926, however, defendant greatly enlarged its plant, and began treating and using Mexican grasses instead of jute, and this has caused the trouble of which plaintiff complains. It appears that, as a result of the operations in which the grasses are used, fumes and vapors are thrown off, together with great quantities of dust and lint, which are blown by the winds onto the surrounding property, to the great inconvenience and discomfort of those who live in the neighborhood, and to the depreciation in value of the property itself. Plaintiff testified that she was greatly inconvenienced and annoyed, and that her health was injured by the dust, lint, and fumes which were thus thrown upon her property; and there was evidence that the value of the property had been depreciated approximately 50 per cent. of its value because of the nuisance.

The learned judge below was of opinion that the dust, lint, and fumes from the plant of defendant affected persons living in the neighborhood to such an extent that the operation of the plant constituted a public nuisance; but, inasmuch as he thought that plaintiff was not affected differently, but only in a different degree from other persons, on whom they were blown, he conclud-

George F. vonKolnitz, of Charleston, S. C. (J. D. E. Meyer, of Charleston, S. C., on the brief), for appellant.

Augustine T. Smythe, of Charleston, S. C. (Lionel K. Legge, of Charleston, S. C., on the brief), for appellee.

692

ed that she had not sustained such special damage as would entitle her to recover under the law as applied by the courts of South Carolina. In this we think he was in error. ▮▮▮ Assuming, without deciding, that the plant of defendant constitutes a public nuisance within the meaning of the South Carolina decisions, we think that there was error in holding that the plaintiff was not entitled to recover on account of the annoyance and inconvenience to which she was subjected and the damage to her property which resulted from its maintenance. There are two kinds of public nuisance. One, sometimes called a "nuisance per se," arises from the impairment or invasion of a common or public right, such as the right to use a public highway; and such a nuisance gives no right of action to an individual, unless he can show that he has sustained special damage different in kind as well as in degree from that sustained by the public at large. But there is another class of public nuisances, the essence of which consists, not in the invasion of a common or public right, but in causing injury, annoyance, or discomfort to individuals in the enjoyment of their property, in such a place or in such a measure that "the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and wrong against the community, which may be properly the subject of a public prosecution." Wesson v. Washburn Iron Co., 13 Allen (Mass.) 95, 90 Am. Dec. 181; Woods v. Rock Hill Fertilizer Co., 102 S. C. 442, 86 S. E. 817, Ann. Cas. 1917D, 1149. In the latter class of nuisances, sometimes called "nuisances per accidens," the wrong done to the individual is not merged in the public wrong, but will support a private action for damages at the instance of the party aggrieved, notwithstanding that indictment may also lie for maintaining a common nuisance. The law is thus clearly stated by Chief Justice Bigelow in the leading case of Wesson v. Washburn Iron Co., supra:

"The real distinction would seem to be this: that when the wrongful act is of itself a disturbance or obstruction only to the exercise of a common and public right, the sole remedy is by public prosecution, unless special damage is caused to individuals. In such case, the act of itself does no wrong to individuals distinct from that done to the whole community. But when the alleged nuisance would constitute a private wrong by injuring property or health, or creating personal inconvenience and annoyance, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance. This, we think, is substantially the conclusion to be derived from a careful examination of the adjudged cases. The apparent conflict between them can be reconciled on the ground that an injury to private property, or to the health and comfort of an individual, is in its nature special and peculiar, and does not cause a damage which can properly be said to be common or public, however numerous may be the cases of similar damage arising from the same cause. Certainly, multiplicity of actions affords no good reason for denying a person all remedy for actual loss and injury which he may sustain in his person or property by the unlawful acts of another, although it may be a valid ground for refusing redress to individuals for a mere invasion of a common and public right. The rule of law is well settled and familiar that every man is bound to use his own property in such manner as not to injure the property of another, or the reasonable and proper enjoyment of it; and that the carrying on of an offensive trade or business, which creates noisome smells and noxious vapors, or causes great and disturbing noises, or which otherwise renders the occupation of property in the vicinity inconvenient and uncomfortable, is a nuisance for which any person whose property is damaged, or whose health is injured, or whose reasonable enjoyment of his estate as a place of residence is impaired or destroyed thereby, may well maintain an action to recover compensation for the injury." ▮ Another statement of the rule, which comes to the same thing when properly understood, and which obviates the necessity of distinguishing between public nuisances which involve the violation of public rights and those which arise out of such widespread violation of private rights as to amount to a wrong against the community, is that "an individual may bring an action on account of a public nuisance when and only when he can show that he has sustained therefrom damage of a special character, distinct and different from the injury suffered by the public generally. In other words, it is essential to the maintenance of a private action that there must have been an infringement of a private right." 20 R. C. L. 460, 461 and cases there cited. But in connection with this rule it must be remembered that an injury to private property, or to the health or comfort of an individual in the enjoyment

of his property, is in its nature damage of a special character within the meaning of the rule, and that persons are deemed to have suffered a special damage within its meaning when they are owners of property affected by the nuisance. See Georgetown v. Alexandria Canal Co., 12 Pet. 91, 99, 9 L. Ed. 1012. It should also be remembered that to maintain a private action it is not necessary that plaintiff be the sole or even a peculiar sufferer, but that, if his grievance is not common to the whole public as in the case of the violation of a public right, he may recover, even though the nuisance may have injured others as well as himself. 20 R. C. L. 462; Downs v. City of High Point, 115 N. C. 182, 20 S. E. 385. To put the matter briefly, if the public nuisance consists in the invasion of a public right, an individual may recover damage upon showing that he has sustained an injury of a special nature not common to the public; if it consists in the invasion of the rights of so many individuals as to amount to a disturbance of and wrong against the community, he may recover upon showing that his rights were among those thus invaded. A wrongdoer cannot escape liability to make indemnity for private injuries by carrying on an offensive enterprise in such place and manner as to cause injury and annoyance to a sufficient number of persons to create a common nuisance.

We agree with the learned judge below and with counsel for defendant that plaintiff's right to recover must be determined by the law of South Carolina. The right of action is essentially local. See Livingston v. Jefferson, Fed. Cas. No. 8411. Also it arises out of the ownership and enjoyment of real property. It is governed, therefore, by the law of the state where the property is situate. Smith v. Staso Milling Co. (C. C. A. 2d) 18 F.(2d) 736. But we do not think that there is any difference between the rule of the common law which we have stated above, and which is established by the great weight of authority, and the rule as applied by the courts of South Carolina.

Woods v. Rock Hill Fertilizer Co., supra, a leading case in South Carolina, decided in 1915, and never overruled, is practically "on all fours" with the case at bar. Plaintiff was the owner of a residence in the city of Rock Hill, S. C., and the defendant was operating a fertilizer plant in the neighborhood. It was claimed that the dust and odors from this plant greatly annoyed plaintiff and injured her property. At the conclusion of the testimony, defendant moved for judgment as of nonsuit on the ground that, if there was a nuisance shown, it was a public and not a private nuisance. The Supreme Court held that this motion was properly overruled, as the evidence sustained the allegations of the complaint, and that the complaint was sufficient, although, as in the case at bar, it alleged merely the maintenance of the nuisance and the damages to plaintiff as in the case of private nuisance. Mr. Justice Hydrick, speaking for the court, said:

"To prevent multiplicity of actions, promote justice, and secure the public tranquility, Courts refused to entertain private actions to remedy purely public nuisances. These may and should be remedied through the public process of indictment. But the Courts recognize the fact that a public nuisance may affect some members of the public in a different manner and inflict upon them injury of a different kind from that suffered by the general public; and, when this is so, it is, as to them, a private nuisance, for which they may have the private remedy of an action. But that which is per se, or prima facie, a public nuisance, is presumed to affect all the public alike, that is, in the same manner, though it may not affect all to the same extent. Therefore the rule is that when a plaintiff complains of that which is per se, or prima facie, a public nuisance, he must allege some injury to himself differing in kind, and not merely in degree, from that suffered by the general public; and, if he fails to state such injury, he states no cause of action, and this for the reason above stated that the Courts will not allow him to have a private remedy for that which affects all the public alike. The cases cited by appellant were cases in which the things complained of were per se, or prima facie, public nuisances, and, therefore the rule above stated was held to apply. * * * But the rule does not apply, and there is no reason for its application, when a plaintiff states, as his cause of action, that which is prima facie only a private nuisance, even though it may appear from his complaint that a determinate number of other persons are or may be similarly affected by it, for a nuisance may affect a considerable number of persons in the same manner and yet not be a public nuisance, and, in that event, if the individuals so affected were denied the private remedy of an action, they would be without any remedy at all, because, if it is not a public nuisance, it is not subject to indictment.

"Now, clearly, a fertilizer mixing plant is not a 'nuisance per se,' that is, a thing

which is a nuisance anywhere and under all circumstances. If it is a nuisance at all, it is what is called a 'nuisance per accidens,' that is, by reason of its location and other circumstances, such as the community in which it is located, or the manner in which it is constructed or conducted. It follows that plaintiff's cause of action is based upon that which is prima facie only a private nuisance, and therefore it was not necessary to the sufficiency of her complaint that she should have alleged injury to herself differing in kind from that suffered by others who may have been affected."

In the earlier case of Barksdale v. Charleston & W. C. R. Co., 83 S. C. 287, 64 S. E. 1013, plaintiff recovered a judgment for damages against defendant on the ground that its operation of a coal chute in the neighborhood of his property constituted a nuisance. One of the contentions was that plaintiff should have been nonsuited on the ground that he had not sustained injury special or peculiar to himself, or differing in kind and degree from that suffered by others in the same neighborhood. In passing upon this question, the court said:

"In the case of Jones v. Railroad, 67 S. C. 181, 45 S. E. 188, the owner of land on a navigable stream brought an action against the railroad company for causing damages to his land by obstructing the flow of freshet waters through the negligent construction of the piers for its bridge. In delivering the opinion of the court Mr. Justice Woods used this language: 'The right which the plaintiff says the defendant invaded was not the right of navigation, or any other right which he held in common with the public, but the right to the unimpaired use of his land on the banks of the river. The fact that the stream was navigable does not affect this question. Blood v. R. R. Co., 2 Gray (Mass.) 137, 61 Am. Dec. 444. The injury alleged is different in degree and kind from any done to the public, and therefore does not fall within the reason of Steamboat Co. v. R. R. Co., 30 S. C. 539, 9 S. E. 650, 4 L. R. A. 209, 14 Am. St. Rep. 923, and other like cases.' The fact that they arose out of the obstruction of a navigable stream which constitutes a public nuisance (Drews v. Burton & Co., 76 S. C. 362, 57 S. E. 176) did not prevent a recovery. We quote from said case *to show that the injury alleged in the complaint was special and peculiar, differing in degree and kind from those to which all others in common with him were exposed.*" (Italics ours.)

Two other comparatively recent cases are to the same effect. Thus, in Cauthen v. Lan-

caster Cotton Oil Co., 96 S. C. 342, 80 S. E. 615, the court upheld the right to recover damages on account of the operation of a cotton oil plant and ginnery near the property of plaintiff. And in White v. Halsey Lumber Co., 96 S. C. 420, 81 S. E. 11, it was held that a property owner might recover damages on account of the nuisance due to the operation of a sawmill near his property, where it appeared that in the operation thereof sawdust was burned in such a way as to create cinders and fine particles of charcoal which were blown by the winds upon nearby property, including that of plaintiff.

In the recent case of Deason v. Southern Ry. Co., decided in 1927, 142 S. C. 328, 140 S. E. 575, the court affirmed a judgment for the plaintiff in a nuisance case, where the nuisance complained of was the obstruction of a flow of surface water by the defendant with consequent damage to plaintiff's lands. In defining "nuisance," in the course of its opinion, it quoted with approval the following from 3 Bouvier's Law Dictionary 2380:

"A mixed nuisance is one which, while producing injury to the public at large, does some special damage to some individual or class of individuals (Wood, Nuisance, 35). * * * Keeping hogs or other animals so as to incommode his neighbor and render the air unwholesome. * * * The remedies are by an action for the damage done by the owner in the case of a private nuisance, * * * or by any party suffering special damage in the case of a public nuisance."

We have carefully examined the cases of Baltzeger v. Carolina Midland Ry. Co., 54 S. C. 242, 32 S. E. 358, 71 Am. St. Rep. 789, and Belton v. Wateree Power Co., 123 S. C. 291, 115 S. E. 587, relied upon by defendant. So far as the Baltzeger Case may be said to hold that the ponding of water which creates a public nuisance is not actionable at the instance of an individual whose property is damaged thereby, it is inconsistent with the later case of Deason v. Sou. Ry. Co., supra, from which we have quoted, and to the extent of the inconsistency must be held to be overruled by it. Furthermore, all of the South Carolina cases to which we have referred on the right to recover damages on account of nuisance were decided after the Baltzeger Case, and the doctrine which they lay down could not possibly be held to be limited or modified in any way by the decision therein.

The Belton Case, while it involved alleged damage to property due to the ponding of water, was not a nuisance case at all, but involved the right to recover consequential

damages resulting from the damming of a stream under legislative authority. The court said:

"Of course, if the injury resulted from a cause not incidental to the legally authorized construction, and constituted a public nuisance, the defendant could claim no protection from the act of charter, so far as relieving it from the charge of creating a nuisance is concerned; and in that event the plaintiff would be entitled to recover for an injury peculiar to himself; or, if the works were negligently constructed, he would be entitled to recover, regardless of whether or not the cause was a public nuisance or the injury peculiar to himself.

"But when it appears, as I think it does, that *the works were authorized by statute, and therefore not a public nuisance*, and that the cause of injury was incidental to the construction, and therefore a necessary, inevitable result of it, I think that the authorities in this state are conclusive of the proposition that *the plaintiff's only remedy was under the condemnation statute*." (Italics ours.)

In view of the foregoing, it is manifest that the case is not to be taken as a controlling authority on the law of nuisance. We certainly would not be justified in departing from what we conceive to be the established doctrine of the South Carolina Courts regarding nuisances because of principles announced by them in an action to recover damages to property resulting, not from nuisance, but from a structure erected under legislative authority; the right to recover such damages being the subject of a distinct branch of the law.

For the reasons stated, we think that the learned district judge was in error in granting the motion to nonsuit plaintiff. The case will be remanded, with directions to set aside the judgment and grant a new trial in accordance with the principles here laid down.

Reversed.