104 F.3d 1196
 1997 A.M.C. 940, 27 Envtl. L. Rep. 20,621,
97 Cal. Daily Op. Serv. 419,
97 Daily Journal D.A.R. 667
 In re The EXXON VALDEZ.
ALASKA NATIVE CLASS, Plaintiff-Appellant,
v.
EXXON CORP., a New Jersey corp.; Exxon Shipping Co., a
Delaware corp.; Exxon Valdez, her engines, tackle
gear, equipment and appurtenances,
Defendants-Appellees.
 No. 94-36007.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1996.
Decided Jan. 17, 1997.
 
 1
 Harry R. Sachse, Sonosky, Chambers & Sachse, Washington, D.C., David Oesting, Davis Wright Tremaine, Anchorage, Alaska, Jerry S. Cohen, Cohen Milstein Hausfeld & Toll, Washington D.C., for the plaintiff-appellant.
 
 
 2
 John F. Daum, O'Melveny & Myers, Los Angeles, California, for the defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Alaska, H. Russel Holland, Chief Judge, Presiding. D.C. No. CV-89-00095(HRH).
 
 
 4
 Before KOZINSKI and LEAVY, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 OPINION
 SCHWARZER, Senior District Judge:
 
 5
 This is one of the numerous actions arising out of the 1989 grounding of the EXXON VALDEZ in Prince William Sound, Alaska, and the resulting massive oil spill. The action, which named Exxon Corporation and others as defendants (collectively referred to as "Exxon"), was originally filed in Alaska state court and was later removed. The complaint alleged a number of claims on behalf of a class of Alaska Natives ("the Class"); the Class consists of:
 
 
 6
 all Alaska Natives and Native organizations including but not limited to, individuals, Native villages, incorporated and unincorporated Native entities and associations and tribal entities, who engage in, rely upon, promote or preserve, wholly or in part, a subsistence way of life....
 
 
 7
 Amend. & Consol. Class Action Complaint at 19 (July 17, 1989). The class definition was later modified to exclude all Native villages and government entities, thereby limiting the claim to 3,455 individual Alaska Natives. The "subsistence way of life" allegedly harmed by the spill is:
 
 
 8
 dependent upon the preservation of uncontaminated natural resources, marine life and wildlife, and reflects a personal, economic psychological, social, cultural, communal and religious form of daily living.
 
 
 9
 Id. The complaint alleges injury to the "subsistence way of life, archaeological sites and artifacts ... natural resources and property upon which [plaintiffs] depend and/or which are part of their natural habitat and lives." Id. at 40.
 
 
 10
 Exxon moved for summary judgment on all of the noneconomic claims asserted by the Class for injury to culture or to the subsistence way of life. The Class acknowledged that the motion was for judgment on the non-economic claims but argued that its members were entitled to recover non-economic damages under general maritime law, the Alaska Environmental Conservation Act (Alaska Stat. § 46.03.822), and the common law of Alaska. In a thorough and well-considered opinion, the court granted the motion for summary judgment on the Class claims for non-economic injury. Subsequently, at the request of the parties, the court issued an order directing entry of final judgment pursuant to Fed.R.Civ.P. 54(b). The order recites that the Class presented two claims, one for cultural damage and the other for harvest damage. The Class claims for harvest damage were settled, and the court consequently determined that there was no just reason for delay in the entry of final judgment as to all "subsistence lifestyle" cultural damage claims.
 
 
 11
 We have jurisdiction of this appeal under 28 U.S.C. § 1291 and now affirm.
 
 DISCUSSION
 
 12
 The principal contention of the Class is that it has stated a public nuisance claim for non-economic damage under federal maritime law. The district court rejected the claim on the ground that "a private litigant cannot recover damages for a public nuisance unless he or she can show a special injury different in kind from that suffered by the general public." Order No. 190 at 3 (citing Oppen v. Aetna Ins., 485 F.2d 252, 259 (9th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 925, 39 L.Ed.2d 116 (1974)). The district court therefore held that "[t]he Alaska Natives' non-economic subsistence claims are not 'of a kind different from [those] suffered by other members of the public exercising the right common to the general public that was the subject of interference.' " Id. at 5-6 (quoting Restatement (Second) of Torts, § 821C(1), cmt. b).
 
 
 13
 The Class does not dispute the applicability of the Restatement rule but argues that the court erred in failing to recognize that the Alaska Natives suffered special injury different in kind from that suffered by the general public. The authorities on which it relies, however, all involve economic damage suffered as a result of a public nuisance. See, e.g., Hampton v. North Carolina Pulp Co., 223 N.C. 535, 27 S.E.2d 538, 545 (1943) (damage to commercial fishing interests); Union Oil Co. v. Oppen, 501 F.2d 558, 570 (9th Cir.1974) (same); Holcomb Constr. Co. v. Armstrong, 590 F.2d 811 (9th Cir.1979) (interference with contract); Oppen v. Aetna, 485 F.2d 252, 260 (9th Cir.1973) (same), cert. denied, 414 U.S. 1162, 94 S.Ct. 925, 39 L.Ed.2d 116 (1974).
 
 
 14
 There is no dispute concerning the Alaska Natives' right to recover economic damage flowing from loss of fishing resources. In a separate order, the district court held that the Alaska Natives who fished for subsistence were entitled to the benefit of the exception for special injury. See Order No. 222. The parties then settled the commodity claims, with the Class receiving compensation for the commercial value of harvest damages. The settlement agreement reserved the "cultural damage claims" of the Class, and only those claims are at issue here.
 
 
 15
 The determinative issue is whether cultural damage--damage to the Class members' "subsistence way of life"--may cause compensable injury. The Class asserts that its claims "comport with established principles of tort recovery" but cites no authority and does not dispute Exxon's assertion that no reported decision supports such a claim. Instead, the Class attempts to infuse an economic character into its claims by arguing that Class members suffered "economically measurable damages" beyond the commercial injury. The Class asserts that its cultural injury has a "pervasive economic foundation" and is based on "economic injuries from disruption of Native subsistence activities." The spill allegedly harmed "an integrated system of communal subsistence ... inextricably bound up not only with the harvesting of natural resources damaged by the spill but also with the exchange, sharing and processing of those resources as the foundation of an established economic, social and religious structure." These arguments miss the mark, however, for all economic claims were resolved in the settlement, and the district court's judgment is specifically limited to non-economic claims.
 
 
 16
 Admittedly, the oil spill affected the communal life of Alaska Natives, but whatever injury they suffered (other than the harvest loss), though potentially different in degree than that suffered by other Alaskans, was not different in kind. We agree with the district court that the right to lead subsistence lifestyles is not limited to Alaska Natives. See Alaska Const. art. VIII, §§ 3, 15 & 17; Gilbert v. State Dep't of Fish & Game, 803 P.2d 391, 399 (Alaska 1990); McDowell v. State, 785 P.2d 1, 11-12 (Alaska 1989). While the oil spill may have affected Alaska Natives more severely than other members of the public, "the right to obtain and share wild food, enjoy uncontaminated nature, and cultivate traditional, cultural, spiritual, and psychological benefits in pristine natural surroundings" is shared by all Alaskans. Order No. 150 at 6. The Class therefore has failed to prove any "special injury" to support a public nuisance action. Restatement (Second) of Torts § 821c, cmt. b.
 
 
 17
 In light of the foregoing disposition of this appeal, there is no need for us to address the applicability of Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), to the facts of this case. Nor do we need to address Alaska statutory and common law, inasmuch as the Class has pointed to no provision or precedent that would permit recovery for cultural damage claims. The Class concedes that Alaska public nuisance law applies the Restatement criteria, and the Restatement standard explicitly precludes the Class claim. Indeed, the strict liability provisions of the Alaska Act only permit recovery for loss of "benefit measurable in economic terms." Alaska Stat. § 46.03.826(2).
 
 
 18
 The judgment is AFFIRMED.
 
 
 
 *
 Honorable William W. Schwarzer, Senior District Judge for the Northern District of California, sitting by designation