IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HOPI TRIBE, *Plaintiff/Appellant,*

*v.*

ARIZONA SNOWBOWL RESORT LIMITED PARTNERSHIP, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 16-0521
FILED 2-8-2018

Appeal from the Superior Court in Coconino County
No. S0300CV201100701
The Honorable Mark R. Moran, Judge

**REVERSED IN PART; VACATED IN PART; AND REMANDED**

COUNSEL

Hunsucker Goodstein, PC, Washington DC
By Michael D. Goodstein, Anne E. Lynch
*Co-Counsel for Plaintiff/Appellant*

Campbell Yost Clare & Norell, PC, Phoenix
By Martin P. Clare
*Co-Counsel for Plaintiff/Appellant*

Hopi Tribe Office of General Counsel, Kykotsmovi
By Karen Pennington, Theresa Thin Elk
*Co-Counsel for Plaintiff/Appellant*

Jennings Strouss & Salmon, PLC, Phoenix
By John J. Egbert, Paul G. Johnson, Scott F. Frerichs
*Counsel for Defendant/Appellee Arizona Snowbowl Limited Partnership*

Renaud Cook Drury Mesaros, PA, Phoenix
By John A. Klecan
*Co-Counsel for Defendant/Appellee City of Flagstaff*

Wieneke Law Group, P.L.C., Tempe
By Kathleen L. Wieneke
*Co-Counsel for Defendant/Appellee City of Flagstaff*

---

## OPINION

Presiding Judge Kenton D. Jones delivered the Opinion of the Court, in which Judge Jon W. Thompson and Judge Jennifer M. Perkins joined.

---

**J O N E S**, Judge:

**¶1**        This case arises from the sale and use of reclaimed wastewater to make artificial snow for ski runs on the San Francisco Peaks (the Peaks) in northern Arizona.  The Hopi Tribe (the Tribe), which opposes the use of reclaimed wastewater on the Peaks, appeals the dismissal of its complaint for lack of standing and the award of attorneys' fees to the City of Flagstaff (the City) and Arizona Snowbowl Resort Limited Partnership (Snowbowl).

**¶2**        At issue is whether the Tribe sufficiently alleged standing to maintain a common law public nuisance claim.  For a private party to bring a claim of public nuisance, it must allege both an interference with a right common to the public and a special injury different in kind from that of the public.  The parties do not dispute that the Tribe sufficiently alleged that the use of reclaimed wastewater interferes with the public's right to use and enjoy the Peaks.  Because we find the Tribe sufficiently alleged the use of reclaimed wastewater causes its members a special injury, different in kind than that suffered by the general public, by interfering with places of special cultural and religious significance to the Tribe, we reverse the trial court's dismissal, vacate the orders denying the Tribe's motion to amend the complaint and awarding Snowbowl and the City attorneys' fees, and remand for further consideration.

2

## FACTS AND PROCEDURAL HISTORY

¶3        The Tribe has contested Snowbowl's presence on the Peaks for decades, long before Snowbowl considered using reclaimed wastewater[1] to make artificial snow, and this case is the latest iteration of that dispute.   In 1981, several plaintiffs, including the Hopi Tribe, challenged the U.S. Forest Service's approval of upgrades to Snowbowl, arguing, among other things, that the approval violated the Free Exercise Clause of the First Amendment.  *See Wilson v. Block*, 708 F.2d 735, 739 (D.C. Cir. 1983).  The plaintiffs argued the approved upgrades would "seriously impair their ability to pray and conduct ceremonies upon the Peaks, and to gather from the Peaks the sacred objects . . . necessary to their religious practices."  *Id.* at 740.   Although noting the proposed upgrades to Snowbowl were "inconsistent with the plaintiffs' beliefs, and will cause the plaintiffs spiritual disquiet," the D.C. Circuit found the upgrades would not impose a substantial burden on the exercise of any religious practices and denied relief.  *Id.* at 742-45.

¶4        Thereafter, in 2002, the City contracted to sell reclaimed wastewater to Snowbowl for the purpose of making artificial snow.  In 2005, the Forest Service approved the use of reclaimed wastewater for snowmaking on the ski runs at Snowbowl.  *Navajo Nation III*, 535 F.3d at 1066 (citing *Navajo Nation I*, 408 F. Supp. 2d at 886).  Several tribes, including the Hopi Tribe, challenged the approval under various federal statutes including the National Environmental Policy Act (NEPA), the National Historic Preservation Act, the Endangered Species Act, the Grand Canyon National Park Enlargement Act, the National Forest Management Act, and

---

[1]        Reclaimed wastewater is treated sewage effluent, which undergoes "specific advanced treatment requirements, including tertiary treatment with disinfection," and "compl[ies] with extensive treatment and monitoring requirements under three separate permit programs."  *Navajo Nation v. U.S. Forest Serv.* (*Navajo Nation I*), 408 F. Supp. 2d 866, 887 (D. Ariz. 2006).  The reclaimed wastewater used for snowmaking at Snowbowl is classified as "A+" by the Arizona Department of Environmental Quality, and is therefore "the highest quality of recycled wastewater recognized by Arizona law."  *Navajo Nation v. U.S. Forest Serv.* (*Navajo Nation III*), 535 F.3d 1058, 1065 (9th Cir. 2008) (en banc).  The Arizona Administrative Code (A.A.C.) allows reclaimed wastewater with a minimum classification of "A" to be used for, among other purposes, irrigation of food crops, schoolground landscape irrigation, fire protection systems, and, of specific interest in the immediate action, making artificial snow.  *See* A.A.C. R18-11-309 tbl. A (2018).

the Religious Freedom Restoration Act (RFRA). *Id.* (citing *Navajo Nation I*, 408 F. Supp. 2d at 871). The district court ultimately resolved all claims in favor of the Forest Service. *Navajo Nation I*, 408 F. Supp. 2d at 908. The tribes then appealed to the Ninth Circuit Court of Appeals, which initially reversed the decision on the tribes' RFRA claim and one alleged NEPA violation and affirmed judgment in favor of the Forest Service on the other claims. *Navajo Nation v. U.S. Forest Serv.* (*Navajo Nation II*), 479 F.3d 1024, 1060-61 (9th Cir. 2007). But, in an 8-3 decision *en banc*, the Ninth Circuit affirmed the district court's decision in all respects. *Navajo Nation III*, 535 F.3d at 1063.

¶5 In 2010, as the City prepared to move forward with the sale of reclaimed wastewater to Snowbowl, the Tribe filed its complaint in the present case, alleging, among other claims, public nuisance. As relevant here, the complaint alleged the use of reclaimed wastewater to make artificial snow harmed the environment, and thus the public's use and enjoyment of the Peaks, because the water "contains recalcitrant chemical components . . . including pharmaceuticals, personal care products, legal and illicit drugs, veterinary drugs, hormones, caffeine, cosmetics, food supplements, sunscreen agents, solvents, insecticides, plasticizers, detergent compounds and other chemicals." The Tribe asserted Snowbowl would not be able to contain the reclaimed wastewater to the ski area because the runoff would enter the water supply and winds would carry the artificial snow beyond the application area. Therefore, the Tribe alleged the contamination of the Peaks would interfere with its cultural and religious practices.

¶6 When the Tribe filed its complaint, Snowbowl had not yet purchased reclaimed wastewater. The City successfully moved to dismiss the complaint, arguing it was barred by claim and issue preclusion. On appeal, another panel of this Court reversed the dismissal, finding the *Navajo Nation* cases did not preclude the Tribe's public nuisance claim, but declined to consider the merits of the claim. *See Hopi Tribe v. City of Flagstaff*, 1 CA-CV 12-0370, 2013 WL 1789859, at *8, ¶¶ 34-35 (Ariz. App. Apr. 25, 2013) (mem. decision).

¶7 Since this Court last reviewed the case, significant procedural developments have occurred. On remand, the City filed a third-party indemnification claim against Snowbowl. Additionally, Snowbowl has now purchased reclaimed wastewater from the City and has made artificial snow on the Peaks. Finally, the Tribe unsuccessfully moved to amend its complaint to add Snowbowl as a defendant and to add a claim for an

injunction against Snowbowl's artificial snowmaking, or, in the alternative, damages resulting from that activity.

**¶8**　　　　Snowbowl moved to dismiss the Tribe's complaint, pursuant to Arizona Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that the Tribe failed to sufficiently allege the type of damages necessary to maintain a public nuisance claim.  The trial court granted the motion to dismiss and awarded attorneys' fees to Snowbowl and the City pursuant to Arizona Revised Statutes (A.R.S.) § 12-341.01(A).[2]  The Tribe timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1), (5)(b).[3]

## DISCUSSION

### I.　　Standard of Review

**¶9**　　　　We review a dismissal for failure to state a claim *de novo. Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012).  Because Arizona follows a notice pleading standard, in the course of our review, we "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts."  *Id.* at 356, ¶ 9 (quoting *Cullen v. Auto-Owners Ins.*, 218 Ariz. 417, 419, ¶¶ 6-7 (2008)).  Dismissal is proper only if the claim fails "under any interpretation of the facts susceptible of proof."  *Id.* at ¶ 8 (quoting *Fid. Sec. Life Ins. v. State, Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998)).  It is not necessary for the plaintiff to prove its case within the complaint; a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief" so as to put opposing parties on notice of the specific nature of the claim against which they must defend.  Ariz. R. Civ. P. 8(a)(2); *see also Cullen*, 218 Ariz. at 419, ¶ 6 (citing *Mackey v. Spangler*, 81 Ariz. 113, 115 (1956)).

### II.　　Standing to Bring Public Nuisance Claim

**¶10**　　　　The parties dispute whether the Tribe sufficiently alleged the type of damages necessary to maintain a public nuisance claim.  A private

---

[2]　　　　Absent material changes from the relevant date, we cite a statute's current version.

[3]　　　　During the course of this appeal, Snowbowl filed two supplemental citations of legal authority.  The Tribe filed a response on January 17, 2018.  A supplemental citation of legal authority is not an invitation for further argument; nor do the Arizona Rules of Civil Appellate Procedure allow for response.  Accordingly, the Tribe's response is stricken.  *See* ARCAP 17, 25.

party pursuing a public nuisance claim must allege: (1) an unreasonable interference with a right common to the public, and (2) a "special injury" different in kind, not merely degree, from that of the public. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 5 (1985) (citations omitted). The special injury requirement serves an important purpose:

> The rationale behind this limitation [is] two-fold. First, it [is] meant to relieve defendants and the courts of the multiple actions that might follow if every member of the public were allowed to sue for a common wrong. Second, it [is] believed that a harm which affected all members of the public equally should be handled by public officials.

*Id.* at 5 (citing Restatement (Second) of Torts § 821C cmt. a (1979), and *Engle v. Clark*, 53 Ariz. 472, 473-74 (1939)). In the present case, the parties do not dispute the sufficiency of the Tribe's allegations that reclaimed wastewater unreasonably interferes with a right common to the public. Accordingly, we limit our discussion to whether the Tribe sufficiently alleged the second element — a special injury.

¶11　　　The contours of a public nuisance claim are imprecise, but the requisite special injury generally falls into one of three categories: interference with privately-owned land, pecuniary loss, or personal injury. *See, e.g.*, *Armory Park*, 148 Ariz. at 3, 5 (transients trespassing on privately-owned property); *Ariz. Copper Co. v. Gillespie*, 12 Ariz. 190, 196, 202 (1909) (mining debris deposited on privately-owned land); *Spur Indus., Inc. v. Del E. Webb Dev. Co.*, 108 Ariz. 178, 184 (1972) (odor and flies causing loss of sales in real estate development); *Sullivan v. Am. Mfg. Co. of Mass.*, 33 F.2d 690, 691 (4th Cir. 1929) (dust and fumes affecting a plaintiff's health and property). Few cases address public nuisance claims arising from activities on public land, and most of those involve commercial fishermen alleging pecuniary loss from pollution in coastal waters. S*ee, e.g.*, *Burgess v. M/V Tamano*, 370 F. Supp. 247, 249-50 (D. Me. 1973) (finding commercial fisherman pleaded a special injury, even though "title to . . . coastal waters and marine life" was vested in the state).

¶12　　　In an analogous case, the U.S. Supreme Court permitted members of a religious group to maintain a public nuisance suit to enjoin the desecration of a cemetery. *See Beatty v. Kurtz*, 27 U.S. 566, 580 (1829). In *Beatty*, members of a Lutheran congregation sought to enjoin the removal of headstones from a cemetery situated upon land conveyed to the congregation. *Id.* The main issue in *Beatty* was whether the land had been

properly conveyed to the congregation. *Id.* at 581-84. The Court held the conveyance was a "dedication of the lot to public and pious uses." *Id.* at 583. However, as a separate issue, the Court addressed whether the church members could maintain the lawsuit to enjoin a third party from destroying the cemetery:

> This is not the case of a mere private trespass; but a public nuisance, going to the irreparable injury of the Georgetown congregation of Lutherans. The property consecrated to their use by a perpetual servitude or easement, is to be taken from them; the sepulchres of the dead are to be violated; the feelings of religion, and the sentiment of natural affection of the kindred and friends of the deceased are to be wounded; and the memorials erected by piety or love, to the memory of the good, are to be removed so as to leave no trace of the last home of their ancestry to those who may visit the spot in future generations. It cannot be that such acts are to be redressed by the ordinary process of law. The remedy must be sought, if at all, in the protecting power of a court of chancery; operating by its injunction to preserve the repose of the ashes of the dead, and the religious sensibilities of the living.

*Id.* at 584-85. This emphasis on the emotional, cultural, and religious significance of the cemetery in *Beatty* supports the Tribe's argument here that interference with a place of special importance can cause special injury to those personally affected, even when that place of special importance is upon public land.

¶13     Adopting this position, we find that within its complaint, the Tribe sufficiently alleges special injury. For example,[4] the Tribe alleges:

> 131.   The purity of the ceremonial objects collected by members of the Hopi Tribe during pilgrimages is of particular importance. These objects cannot be used for ceremonial purposes if they become tainted or impure.

> 138.   . . . Natural resources that the Hopi collect, as well as shrines, sacred areas, and springs on the Peaks will come into

---

[4]     The inclusion of these examples is in no way intended to limit the Tribe's claims of special injury to the excerpted paragraphs in future proceedings.

contact with the blown reclaimed wastewater . . . . This negatively impacts the Hopi's use of the Snowbowl Resort Area, the Wilderness Area, and surrounding areas, and causes Hopi practitioners to stop using the areas they have traditionally used.

201.    The Hopi Tribe suffers specific injury . . . because the prevailing winds will blow the artificial snow outside the boundaries of the application area thus negatively impacting Hopi's use of these areas, including for ceremonial practices . . . .

202.    The Hopi Tribe will suffer specific injury . . . because the artificial snow will blow towards, and melting snow will runoff into, springs and water bodies the Hopi Tribe uses for ceremonial and utilitarian purposes.

¶14        We are not persuaded by the City's reliance upon *Oppen v. Aetna Insurance Co.*, 485 F.2d 252 (9th Cir. 1973).  There, the Ninth Circuit held that boat owners seeking to recover damages following an oil spill were not specially injured when "deprived of no more than their occasional Sunday piscatorial pleasure."  *Id.* at 253, 260 (internal quotations omitted). Unlike *Oppen*, where the boat owners' loss of navigation rights was no different in kind from that suffered by the public generally, *see id.* at 260, here, the Tribe distinguishes its cultural and religious interest in the Peaks from the recreational interests of the public at large.

¶15        Snowbowl's reliance upon *In re Exxon Valdez*, 104 F.3d 1196 (9th Cir. 1997), is likewise misplaced.  In *Exxon*, the Ninth Circuit held that a class of Alaska Natives failed to allege a special injury resulting from an oil spill when the class alleged the spill affected their "subsistence way of life." *Id.* at 1198.  A careful reading shows the plaintiffs characterized their injuries as economic, arguing the damage to natural resources caused by the oil spill was "inextricably bound up . . . with the exchange, sharing and processing of those resources as the foundation of an established economic, social and religious structure." *Id.*  The Ninth Circuit found this argument was precluded because all economic claims had been resolved in a prior settlement.  *Id.*  Moreover, the Ninth Circuit relied upon provisions within the Alaska Constitution reserving the natural resources of the state "to the people for common use" in concluding "the right to lead subsistence lifestyles is not limited to Alaska Natives."  *Id.* (citing Alaska Const. art. VIII, §§ 3, 15, 17; *Gilbert v. State Dep't of Fish & Game*, 803 P.2d 391, 399 (Alaska 1990); and *McDowell v. State*, 785 P.2d 1, 11-12 (Alaska 1989)).

Arizona does not have equivalent constitutional provisions, and all people do not share in the Tribe's religious and cultural interest in the Peaks. Accordingly, the court's reasoning in *Exxon* is inapplicable here.

**¶16**         At the pleading stage, the Tribe needs do no more than set forth facts that, if proven, would warrant relief. *See supra* ¶ 9. Assuming the truth of all well-pleaded facts, we find the Tribe has alleged a special injury sufficient to survive the motion to dismiss. Accordingly, we reverse the trial court's dismissal of the complaint and remand for further proceedings.[5]  We express no opinion as to the merits of the Tribe's underlying claims.

### III.    Amended Complaint

**¶17**         The trial court denied the Tribe's motion to amend after determining the proposed amended complaint "would be futile, as it fails to allege the required element of special injury." Because we find the Tribe's allegations are sufficient to survive the motion to dismiss, we vacate the order denying the motion for leave to amend on this basis. We leave it to the parties and the court on remand to determine whether the filing of an amended complaint is necessary and/or appropriate.

### IV.    Attorneys' Fees

**¶18**         The trial court awarded attorneys' fees to Snowbowl and the City. The Tribe argues the court erred because the claims did not arise out of contract. *See* A.R.S. § 12-341.01(A) (authorizing an award of fees to the prevailing party in an action arising out of contract). Because we reverse the dismissal, Snowbowl and the City can no longer be deemed the successful parties, and the fee award is vacated.

---

[5]      After dismissing the complaint for failure to state a claim of special injury, the trial court declined to address Snowbowl's other arguments for dismissal. Because the court did not rule on those issues, we do not address them. *See Twin City Fire Ins. v. Leija*, 243 Ariz. 175, 182, ¶ 23 (App. 2017).

## CONCLUSION

¶19        The trial court's order dismissing the Tribe's complaint is reversed.  The court's order denying the Tribe's motion for leave to file an amended complaint is vacated.  The case is remanded for further action consistent with this Opinion.